**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cv257-MU-2
(3:03cr67-MU)**

| | | |
|---|---|---|
| **LEWIS MOSES BYRD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

 **THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence, filed June 5, 2008 (Doc. No. 1); Respondent's Motion

for Summary Judgment, filed October 20, 2008 (Doc. No. 8); Petitioner's responses in

opposition to Respondent's Motion for Summary Judgment, both filed December 3, 2008 (Doc.

Nos. 10 through 12); and Petitioner's proposed claim under 28 U.S.C. § 2255, filed January 20,

2011 (Doc. No. 18).

## I. FACTUAL AND PROCEDURAL HISTORY

 On April 29, 2003, the Government filed a Bill of Indictment charging Petitioner with

possessing an unspecified quantity of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count

One), using and carrying two firearms during and in relation to a drug trafficking crime and

possessing such firearms, in violation of 18 U.S.C. § 924(c)(1) (Count Two), and with

possessing the two firearms after having been convicted of second degree murder and possession

with intent to sell or deliver cocaine, in violation of 18 U.S.C. § 922(g)(1) (Count Three).

(Criminal Case No. 3:03cr67, Doc. No. 1).  On May 7, 2003, the Government filed an Information pursuant to 21 U.S.C. § 851, listing Petitioner's 2002 drug trafficking conviction and noting that such conviction would expose him to an increased statutory mandatory minimum term if the Government obtained a conviction under Count One.  (Id., Doc. No. 3).  On August 26, 2003, the Government filed a Superseding Bill of Indictment which specified that Count One involved five grams or more of cocaine base.  (Id., Doc. No. 15).

On December 23, 2003, the parties filed their Plea Agreement.  (Id., Doc. No. 20).  Such Agreement memorializes Petitioner's promise to plead guilty to Counts One and Two in exchange for the Government's promise to dismiss Count Three.  (Id. at 1).  The Agreement further reflects Petitioner's acknowledgments that he was facing a statutory minimum of 10 years up to life imprisonment for the drug charge alleged under Count One, and a consecutive statutory mandatory minimum term of ten years imprisonment for having discharged one of the firearms listed in Count Two.  (Id.).  The Agreement also contains Petitioner's stipulations that the amount of cocaine base that was known to him or reasonably foreseeable by him was at least five but less than 50 grams; that one of the firearms involved in Count Two was discharged; and that he qualified as a Career Offender as defined under  U.S. Sentencing Guidelines § 4B1.1. (Id. at 2).  In addition, the Agreement reflects Petitioner's waiver of his rights to directly or collaterally challenge his convictions or sentences on any grounds except ineffective assistance of counsel, prosecutorial misconduct, or that his sentence was calculated in a manner that was inconsistent with explicit stipulations set forth in that Agreement.  (Id. at 5).  Further, the Agreement sets forth Petitioner's acknowledgment that the Government had the right to file its § 851 Notice and to modify the parties' Agreement, as necessary, in order to make it conform to such Notice.  (Id. at 3).  Last, the Plea Agreement reflects Petitioner's stipulations that there was

a factual basis to support his guilty pleas, and that the Court could rely upon the offense conduct described in Petitioner's Pre-Sentence Report to further establish the factual basis for his pleas. (Id. at 4).

On January 7, 2004, Petitioner and defense counsel appeared before the Court for his Plea and Rule 11 Hearing. On that occasion, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that his pleas were being freely and intelligently tendered. (Id., Doc. No. 21). Petitioner's responses to the Court's numerous questions established, inter alia, that he had received a copy of the Indictment, had discussed its contents with his attorney, and understood the charges along with their elements and corresponding penalties. (Id. at 1-2). Said answers established that Petitioner had been given sufficient time to discuss possible defenses to the charges with counsel; and that he and counsel had discussed the Sentencing Guidelines and how the Court might apply them to his case. (Id. at 1-2 and 4). Petitioner's answers further established his understanding of the terms of his Plea Agreement, including the rights he was relinquishing by virtue of the waiver provision set forth therein; and that if he received a sentence that was more severe than he was expecting, he still would have been bound by his pleas and would not have had the right to withdraw them. (Id. at 2-3).

Petitioner's answers also established that no one had threatened, intimidated or forced him to enter his guilty pleas, and no one had made him any promises of leniency in order to induce his pleas. (Id. at 3). Such answers showed that Petitioner was tendering his guilty pleas because he was guilty of the subject charges, he wanted to plead guilty, and he wanted the Court to accept his pleas. (Id. at 1 and 3). Furthermore, Petitioner's answers established that he was, at least up to that point, satisfied with the services of his attorney and did not have any questions or comments about the proceeding. (Id. at 4). Last, the record reflects that Petitioner remained

silent when his attorney affirmed to the Court that she had reviewed the terms of the Plea Agreement with Petitioner and was satisfied that Petitioner understood those matters and knew what he was doing. (Id.). Consequently, after considering all of Petitioner's answers, the Court determined that his guilty pleas were being knowingly and voluntarily tendered, and accepted his pleas. (Id.).

On September 13, 2004, the United States Probation Office prepared Petitioner's Pre-Sentence Report. Such Report indicated that Petitioner was a Career Offender by virtue of his prior murder and drug trafficking convictions. (Pre-Sentence Report, dated September 13, 2004, at 5). Therefore, the Officer determined that Petitioner's total offense level was 34, his criminal history category was VI, and his corresponding ranges of imprisonment were 262 to 327 months for Count One and a consecutive 120-month term of imprisonment for Count Two. (Id. at 12).

More than nine months after he entered his pleas in January 2004 -- but only one month after his Pre-Sentence Report was sent to counsel, Petitioner filed a letter-motion asking the Court for replacement counsel. (Id., Doc. No. 24, filed October 21, 2004). The letter-motion alleged, in part, that counsel had induced Petitioner to enter into his Plea Agreement with erroneous advice; that she rushed him into accepting the Agreement without an investigation; and that she failed to advise him of his inability to withdraw his pleas after their entry. (Id. at 1).

On November 4, 2004, the Court held a hearing during which defense counsel explained that she had held many meetings with Petitioner and had spent considerable time explaining his case to him, and she had explained why he was subject to the career offender provisions.[1] Counsel also told the Court that Petitioner had given her a copy of a case that he believed would

---

[1] Although there is no stenographic transcript of this proceeding, the Court has listened to the official electronic recording of the proceeding.

prove that his drug conviction could not be used as a predicate offense for career offender purposes. However, counsel stated that it was not until she explained to Petitioner why the case was inapplicable to him that he first expressed his dissatisfaction with her and revealed his plan to seek new counsel. The Court then noted that it had long ago put Petitioner on notice that he was facing a lengthy sentence when it explained his exposure to him during his detention hearing. The Court further found that although counsel had diligently and appropriately represented Petitioner and had given him "perfectly accurate" advice, it appeared that their relationship had broken down to the point that it was prudent to appoint replacement counsel. Accordingly, on that basis, the Court allowed counsel to withdraw and appointed replacement counsel for Petitioner. (Criminal Case No. 3:03cr67, Doc. No. 25).

On January 24, 2006, Petitioner appeared with replacement counsel for his Factual Basis and Sentencing Hearing. At the outset of that proceeding, the Court noted that Petitioner previously had appeared before the Court and knowingly and voluntarily tendered his guilty pleas. (Transcript of Sentencing, filed March 24, 2006 at 2). The Court then determined that Petitioner had reviewed his Pre-Sentence Report with his new attorney; and that such Report provided an adequate factual basis for Petitioner's guilty pleas. (Id.). Thereafter, the Court adopted the Probation Officer's calculations and concluded that Petitioner was a Career Offender whose total Guidelines sentencing range was 382 to 447 months imprisonment. (Id. at 3 and 7).

Petitioner addressed the Court and asked it to consider that he was 17 years old when he sustained his murder conviction and that many other people had committed worse crimes but received less punishment than he was facing. (Id. at 6). Notably, however, Petitioner made no mention of withdrawing his guilty pleas. (Id.). Ultimately, the Court sentenced Petitioner to a 262-month term of imprisonment on Count One and to the statutory mandatory minimum 120-

month consecutive term of imprisonment on Count Two. (Id. at 7).

Petitioner appealed to the Fourth Circuit Court of Appeals and the Government declined to seek a dismissal under the waiver provision in the parties' Plea Agreement. United States v. Byrd, 208 F. App'x 216, 217 & n. 1 (4th Cir. Dec. 6, 2006) (unpublished). Therefore, Petitioner's attorney was able to proceed with his brief under Anders v. California, 386 U.S. 738 (1967), asking the Court to review the reasonableness of Petitioner's sentence under the Career Offender provisions. Id. at 217. As to that issue, however, the Court of Appeals determined that Petitioner's sentence was presumptively reasonable because it was imposed within the "properly calculated Guidelines range"; that Petitioner had failed to overcome that presumption; and, therefore, that the sentence was reasonable. Id.

In addition, the appellate Court entertained Petitioner's supplemental claims that his guilty plea to the firearm conviction was not knowingly and voluntarily entered because he was not fully apprised of the mandatory minimum ten-year sentence that he faced for discharging the gun; that the Court improperly relied upon his second-degree murder conviction in determining his career offender status because he was sentenced as a youthful offender for that prior con- viction; that the Court also erred in using his 2002 drug conviction as a predicate offense for his career offender status because he was sentenced to just eight months for that conviction; and that the Court violated United States v. Booker, 543 U.S. 220 (2005), when it deemed him a career offender on the basis of prior convictions which were not proven to a jury beyond a reasonable doubt. Id. at 217-18 & nn. 3 and 5. However, the appellate Court determined that the record belied Petitioner's claim of an involuntary or unintelligent guilty plea because the terms of his Plea Agreement explicitly advised him of the penalty he was facing, and he indicated his understanding of and consent to the Agreement's terms during his Plea and Rule 11 proceeding.

Id. at 217.  The Court further found that Petitioner's youthful offender sentence for his murder conviction was a type of adult sentence that properly was used to subject him to career offender status.  Id. at 218.  Similarly, the Court determined that Petitioner's 2002 drug conviction also was a permissible predicate offense because, notwithstanding his eight-month sentence for that conviction, the offense of conviction carried a maximum term exceeding one year, i.e. thirty months' imprisonment, for a defendant with the worst possible criminal history.  Id. n. 3.  Last, the Court determined that this Court's reliance upon its own findings concerning the status of Petitioner's criminal record did not violate Booker.  Id. n. 5.  Consequently, after examining the entire record and finding no meritorious issues for appeal, the Court of Appeals affirmed Petitioner's convictions and sentence.  Id.

Thereafter, the Court of Appeals denied Petitioner's Petition for Rehearing En Banc (Doc. No. 5).  The United States Supreme Court denied Petitioner's petition for certiorari review.  Byrd v. United States, 551 U.S. 1124 (2007).

On June 5, 2008, Petitioner filed the instant Motion to Vacate arguing that he was subjected to several instances of ineffective assistance of counsel and to prosecutorial misconduct.  (Doc. No. 1).  Petitioner claims that his first attorney was ineffective for failing to challenge the search of his residence or the sufficiency of the underlying search warrant, and for advising him to plead guilty pursuant to the Government's plea offer. (Doc. No. 1-1 at 3-15).  Petitioner further claims that his second attorney was ineffective for failing to move for the withdrawal of his guilty pleas, and for failing to object to certain calculations in his Pre-Sentence Report.  (Id. at 16-29).  Petitioner last claims that the prosecutor engaged in misconduct when she coerced him into pleading guilty to conduct with which he was not charged, and when she failed to withdraw the Government's § 851 Notice.  (Id. at 30-32).

On October 20, 2008, Respondent filed its Answer denying the material allegations in Petitioner's Motion. (Doc. No. 7). Respondent argues that Petitioner has failed to establish deficient performance and/or prejudice in connection with his claims against his former attorneys, and he has failed to demonstrate that the prosecutor engaged in any misconduct. (Id. at 9-15). Accordingly, on October 20, 2008, Respondent also filed a Motion for Summary Judgment asserting that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. (Doc. No. 8).

On December 3, 2008, Petitioner filed three documents in response to Respondent's Motion for Summary Judgment. (Doc. Nos. 10 through 12). The first of the responses merely asks for an evidentiary hearing on the claims in his Motion to Vacate and contends that Respondent is not entitled to a summary judgment. (Doc. No. 10 at 1-2).

By his second response, Petitioner primarily takes issue with the declarations made by his former attorneys' in their Affidavits in support of Respondent's Motion for Summary Judgment. (Doc. No. 11). In particular, Petitioner denies that his first attorney explained that he was pleading guilty to Counts One and Two, explained the difference in the penalties under Counts Two and Three, explained the Career Offender provisions or the two Guidelines Amendments which he believes were applicable to his sentence, advised him of his possible sentencing range, or discussed his "potential legal options" before he entered his guilty pleas. (Doc. No. 11 at 1-3). Petitioner also denies that he told replacement counsel that he did not want a trial in the event that counsel got his pleas were withdrawn. (Id. at 3). Petitioner also reiterates his allegations of coercion, unintelligent and involuntary guilty pleas, denied requests for the withdrawal of his pleas, and a lack of understanding concerning his Pre-Sentence Report. (Id. at 2-4).

In his third response, Petitioner disputes Respondent's recitation of the procedural and factual background and essentially reiterates the majority of his earlier allegations concerning his attorneys' allegedly deficient conduct.  (Doc. No. 12) .

On January 20, 2011, Petitioner filed a document seeking to add a claim that he is entitled to re-sentencing on the basis of a recent U.S. Supreme Court decision.  (Doc. No. 18). However, Petitioner does not report that Respondent has consented to this amendment and he does not seek permission form the Court to add the claim.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment a  matter of law."  Fed. R. Civ. P. 56(a).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  <u>Id.</u> at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  <u>Id.</u> at 324.  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>Sylvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any

inferences from the evidence in the light most favorable to the nonmoving party.  <u>Anderson</u>, 477

U.S. at 255.  "'Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial.'"  <u>Ricci v. DeStefano</u>, 129 S.Ct. 2658,

2677 (2009) (quoting <u>Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

### III. <u>DISCUSSION</u>

**A.  Petitioner claims that his attorneys rendered ineffective assistance.**

To establish a claim of ineffective assistance of counsel, a petitioner must show both that

counsel's performance fell below an objective standard of reasonableness, and that he was

prejudiced by such constitutionally deficient representation.  <u>Strickland v. Washington</u>, 466 U.S.

668, 687-91 (1984); <u>see also</u> <u>Fields v. Attorney Gen. of State of Md.</u>, 956 F.2d 1290, 1297 (4th

Cir. 1992).  In measuring that performance, there is a strong presumption that counsel's conduct

was within the wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 689.

Thus, the Court must be "highly deferential in scrutinizing [the attorney's] performance and

must filter the distorting effects of hindsight from [its] analysis."  <u>Burket v. Angelone</u>, 208 F.3d

172, 189 (4th Cir. 2000).

A petitioner who alleges ineffective assistance of counsel following entry of a guilty plea

has a slightly different burden to meet.  <u>See, e.g.</u>, <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985).  In

this circumstance, the petitioner "must show that but for the assertedly ineffective assistance, a

reasonable defendant would have insisted on proceeding to trial."  <u>Burket v. Angelone</u>, 208 F.3d

172, 190 (4th Cir. 2000) (citing <u>Hill</u>, 474 U.S. at 59).   Alternatively, when a petitioner claims

that he was subjected to ineffective assistance of counsel during his sentencing proceeding, the

standard articulated in <u>Strickland</u> is appropriate.  That is, in order to prevail on a claim that

counsel was ineffective at sentencing, the petitioner must show that his "sentence would have

been more lenient" absent counsel's error.  Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir.

1999).

        In either case, when evaluating post-guilty plea claims of ineffective assistance of

counsel, statements previously made under oath, particularly those made during a Rule 11

proceeding which affirm an understanding of the proceedings and satisfaction with counsel, are

deemed binding in the absence of "clear and convincing evidence to the contrary."  Fields, 956

F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977).  Indeed, such statements

"constitute a formidable barrier" to their subsequent attack.  Blackledge, 431 U.S. at 73-74.  In

short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly

and voluntarily tendered, absent compelling reasons to the contrary, the validity of the plea and

the petitioner's corresponding responses are deemed to be conclusively established.  Via v.

Superintendent, Powhatan Correctional Center, 643 F.2d 167 (4th Cir. 1981).

        Last concerning claims of ineffectiveness, the law is clear that it is the petitioner who

"bears the burden of proving Strickland prejudice."  Fields, 956 F.2d at 1297 (citing Hutchins v.

Garrison, 725 F.2d 1425, 1430-31 (4th Cir. 1983)).  In the event that the petitioner fails to meet

this obligation, a "reviewing court need not consider the performance prong."  Fields, 956 F.2d at

1290.

    **1.  Counsel's handling of the search and underlying search warrant was not
       deficient**.

        Petitioner alleges that the search of his apartment was unlawful because the search

warrant was not supported by sufficient probable cause and the officers did not have consent for

the search.  Therefore, Petitioner claims that counsel was ineffective for failing to challenge the

search and the underlying search warrant.

Once a search warrant has been issued, review of the issuing officer's probable cause determination is to be shown "great deference." United States v. Richardson, 607 F.3d 357, 369 (4th Cir. 2010). Thus, the task of a reviewing court is to determine whether there is "substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984). Furthermore, "[b]ecause of the fourth amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to 'invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical rather than a commonsense, manner.'" United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

The record reflects that on March 5, 2003, Charlotte-Mecklenburg Police Officers J.T. Lang and D.L. Crawford applied to a Mecklenburg County magistrate for permission to search apartment 206 at 206 at 5905 Farm Pond Lane, Charlotte, NC – Petitioner's apartment. In support of that application, the Officers swore to the following facts: (1) that a confidential and reliable informant had advised them that within the preceding 48 hours, such informant had been inside that apartment and observed a Black male subject, described as 20 to 25 years old, approximately 5'3" to 5'4" tall and 110 to 125 pounds with a dark complexion, possessing and selling cocaine from that location; (2) that one of the Officers had known the informant for approximately six years and the other had known him for about three months; (3) that the affiants had a combined total of 12.5 years of law enforcement experience at the time they applied for the warrant; (4) that the affiants had been involved with more than 500 drug arrests and investigations; and (5) that during the course of their employment, the affiants also had received substantial training in the investigation of drug trafficking and related offenses. (Doc. No. 1-1 at 36). In addition, the Officers swore that since the time that they became acquainted

with the informant, he had provided them with information that had led to multiple arrests for violations of North Carolina's Controlled Substance Act and to the seizure of controlled substances; that the informant had made supervised purchases of controlled substances; that he had provided  intelligence concerning drug distributors in the Charlotte area, which information was verified as true and factual by the affiants; and that he had admitted that he sold and used controlled substances in the past, and was familiar with how those substances were packaged and sold.  (Id.).  On that information, the magistrate found that there was "probable cause to believe that the property and person described in the application . . . related to the commission of a crime [and was] located as described in the application."  (Id. at 35).  Therefore, the magistrate issued the search warrant for Petitioner's apartment.  (Id).

Based upon the foregoing, this Court finds that the magistrate had, under the totality of the circumstances, substantial evidential evidence to support his probable cause determination.  Richardson supra, 607 F.3d at 369.  Therefore, counsel had no basis to argue that the search was unlawful because the Officers executed that search pursuant to a lawfully issued warrant.

Furthermore, while the Constitution allows defendants, under certain narrowly defined circumstances, to attack a facially sufficient affidavit, no such circumstance is involved herein. In order to challenge the sufficiency of an otherwise valid affidavit, a defendant must make a substantial preliminary showing both that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant; and that the offending information is essential to the probable cause determination such that its exclusion would have made it impossible for the issuing officer to have found probable cause.  Franks v. Delaware, 438 U.S. 154, 171-72 (1978).  This showing "must be more than conclusory," it should precisely identify the allegedly false statement, and should include affidavits or evidence to overcome the

"presumption of [the warrant's] validity." Id. at 171.

Petitioner does not identify a false or misleading statement in the Officers' Affidavit but complains that the Affidavit fails to identify, by name or nickname, the person who sold the cocaine from the apartment, or to establish that the Officers personally verified the informant's tip.  However, there is no requirement that an affidavit supporting a search warrant identify the occupants of the premises by name.   See, e.g., United States v. Reddicks, 237 F. App'x 826, 829 (4th Cir. 2007) (per curiam) (unpublished); Malacrauis v. United States, 299 F. 253, 254 (4th Cir. 1924) ("John Doe" warrants permissible when occupants of premises names are unknown). Rather, an application to search a residence is focused on the location to be searched; thus, the particularity-of-description requirement is satisfied where "the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." Maryland v. Garrison, 480 U.S. 79, 91 (1987).

Likewise, the law is clear that an affidavit in support of a search warrant may be based in whole or in part on hearsay information so long as the issuing officer is "informed of some of the underlying circumstances supporting the affiant's conclusions . . ." and his belief that the informant's was credible or his information reliable.   See, e.g., United States v. Ventresca, 380 U.S. 102, 108 (1965) (internal quotation mark and citation omitted).  In the instant case, the Officers' Affidavit contains the necessary indicia of reliability as it sufficiently sets out the facts underlying their conclusions and the information supporting their belief that the informant was credible and his tip was reliable.

Moreover, the Court finds that even assuming, as Petitioner alleges, that the Officers failed to "knock and announce" themselves and their purpose before entering as required by the Fourth Amendment, Richards v. Wisconsin, 520 U.S. 385, 387 (1997), he still cannot establish

that counsel was ineffective for not challenging the search or seeking to suppress the evidence on that basis.   Indeed, the Supreme Court stated that the "knock and announce" rule has never protected "one's interest in preventing the government from seeing or taking evidence described in a warrant." Hudson v. Michigan, 547 U.S. 586, 594 (2006).  In Hudson, the Court explained that "the interests protected by the knock-and-announce requirement are quite different – and do not include the shielding of potential evidence from the government's eyes . . . ." Id. at 593. Therefore, because the interests that are violated by a failure to knock and announce "have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." Id. Similarly, Hudson repeated the Supreme Court's earlier determination that "an impermissible manner of entry," such as breaking in a door or window, also will not "necessarily trigger the exclusionary rule." Id. at 602.   Rather, as Hudson suggests, such violations, if provable, can be remedied through civil litigation; therefore, "[r]esort to the massive remedy of suppressing evidence of guilt is unjustified." Id. at 599.

Moreover, to the extent that Petitioner is claiming that there were witnesses who could have substantiated his allegation of a "knock and talk" violation and counsel was ineffective for failing to question such witnesses, he was not prejudiced by that alleged deficiency.  As Hudson reflects, the presentation of any such witnesses' statements still would not have required the Court to suppress the incriminating evidence against Petitioner.   Consequently, Petitioner cannot prevail on his claim that counsel was ineffective for declining to challenge either the lawfulness of the search or the sufficiency of the Affidavit supporting the search warrant on any of these alleged grounds.

## 2.  Counsel's advice concerning Petitioner's guilty pleas was not deficient.

Petitioner also alleges that his first attorney was ineffective because she coerced and

15

misled him into pleading guilty to the drug charge in exchange for the Government's promise to dismiss the felon-in-possession charge, and she improperly induced him to plead guilty under the Government's Plea Agreement.   (Doc. No. 1-1 at 12).   Petitioner further claims that counsel failed to explain significant details concerning the charges to which he was pleading or their corresponding sentences, she negotiated the plea arrangement without his consent, and she promised him that he would be sentenced to no more than twenty years' imprisonment.  (Id. at 12-15).   However, these allegations must be rejected for several significant reasons.

First, to the extent that Petitioner is claiming that his plea to the firearm charge was coerced, unlawfully induced or unintelligently made, the Court of Appeals already rejected those allegations in finding that Petitioner had "knowingly and voluntarily entered his guilty plea" to the subject firearm charge.  Byrd, 208 F. App'x at 218-19.   Inasmuch as Petitioner has failed to point to an intervening change in law which would entitle him to re-litigate this issue, his allegations attacking the validity and enforceability of this particular guilty plea are foreclosed. United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (the "law of the case" doctrine forecloses re-litigation of issues expressly or impliedly decided by the appellate court); Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976) (absent an intervening change in law, issues decided on direct appeal may not be re-litigated in habeas case).

Likewise, the record of Petitioner's Plea and Rule 11 hearing also contains his sworn assurances that he and counsel had discussed the drug charge, its penalties and possible Guide-lines applications, and he understood those matters.  It contains his assurances that his plea was not the result of any threats, coercion or promises of leniency; that he understood and agreed to the terms of his Plea Agreement; that he was guilty of the subject charge; that he heard and understood the Plea and Rule 11 proceeding; that he understood the rights he was relinquishing

16

by pleading guilty; and that he wanted the Court to accept the plea.  (Criminal Case No. 3:03cr67, Doc. No. 21 at 1-4).  Furthermore, both Petitioner's Plea Agreement and his Rule 11declarations establish his understanding that he was facing a **minimum** of 10 years up to life imprisonment upon a conviction to the drug charge.  Nevertheless, Petitioner has failed to forecast the existence of any evidence to overcome the conclusiveness of these solemn declarations.  <u>Fields</u>, <u>supra</u>, 956 F.2d at 1299.  Therefore, Petitioner's earlier declarations defeat his current allegations that he was subjected to coercion, counsel failed to explain the charge and penalties to him, and his plea was induced by a false promise of a 20-year sentence.

Second, Petitioner's allegation that counsel misled him into pleading guilty in exchange for the Government's promise to dismiss the felon-in-possession charge is patently frivolous.  Indeed, the record clearly shows that the Government did, in fact, dismiss the felon-in possession charge.  Therefore, Petitioner was not misled in this regard.

Third, Petitioner cannot establish any prejudice in connection with his claim that counsel negotiated the Plea Agreement without his consent.  Notwithstanding his attorney's efforts to secure a favorable plea arrangement for him, had Petitioner wanted to reject the Government's plea offer, when he appeared before the Court for his plea hearing he could have indicated his desire to plead guilty without an agreement or to proceed to trial on the charges.  However, Petitioner chose neither of these options but instead swore to the Court that he wanted to plead guilty to the two charges under the terms of his written Plea Agreement.   (Criminal Case No. 3:03cr67, Doc. No. 21 at 1 and 3).

In any case, the Pre-Sentence Report reflects that the Government had substantial evidence of Petitioner's guilt of all three charges in the Indictment.  The Report reflects that on or about March 3, 2003, two Charlotte-Mecklenburg Police Officers received information from a

17

confidential informant who indicated that a man, whom the informant described in some detail, was selling cocaine from an apartment. (Pre-Sentence Report, dated September 13 , 2004 at 2 and 4). On March 5, 2003, the two Officers, along with several others, executed a search warrant on Petitioner's apartment, at which time they found approximately 17 grams of cocaine base, a handgun, a 12-gauge shotgun and multiple rounds of ammunition. (Id.). The Report further reflects that during the course of that search, Petitioner fired the handgun and struck an Officer, and that said Officer also was struck by another Officer who was returning fire on Petitioner. (Id.). The Report also reflects that at the time of the search, Petitioner previously had sustained convictions for second degree murder and possession with intent to sell and deliver cocaine. (Id. at 7-8).

Petitioner does not forecast any evidence that could have been presented in defense of the charges but merely claims that he thought he was shooting at an intruder. (Doc. No. 1-1 at 6). Therefore, it appears that the Government had more than ample evidence with which to convict Petitioner. Had Petitioner been convicted of the charges, he would have lost the three-level reduction in his offense level for acceptance of responsibility, and would have faced a total minimum term of 480 months up to life imprisonment (that is, 360 months to life imprisonment under Count One, a concurrent term of 180 months imprisonment under Count Three, and a consecutive term of 120 months imprisonment under Count Two). Consequently, Petitioner cannot demonstrate that, in the absence of counsel's alleged errors, a reasonable defendant in his situation would have insisted on proceeding to trial. Burket, 208 F.3d at 190.

Ultimately, Petitioner cannot establish either deficient performance and/or prejudicial results in connection with any of the foregoing allegations.

**3. Replacement counsel did not render ineffective assistance**.

### a. Withdrawal of Petitioner's guilty pleas

Petitioner claims that replacement counsel also was ineffective for failing to honor his request to withdraw his guilty pleas on the ground that they were not intelligently and voluntarily entered.[2] (Doc. 1-1 at 16-17). Respondent contends, among other matters, that Petitioner's claim fails because he does not show that counsel would have had a fair and just reason to support the motion to withdraw Petitioner's pleas.

_____In order to establish a "fair and just" reason to withdraw a guilty plea, Petitioner must show that counsel could have carried his burden of persuasion with respect to the six factors which are used by the Court in evaluating motions to withdraw guilty pleas. United States v. Thompson-Riviere, 561 F.3d 345, 348 (4th Cir. 2009) (identifying the six factors to be considered in evaluating a motion to withdraw a guilty plea). Chief among these factors are requirements that a defendant show, by credible evidence, that his pleas were not knowingly or voluntarily entered, he is legally innocent, and he did not have the close assistance of competent counsel at the time he entered his plea. United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995).

As was noted, the Fourth Circuit has concluded that Petitioner's plea to the firearm charge was freely and voluntarily made. Byrd, 208 F.3d at 218. Critically, the same sworn declarations and documentary evidence upon which the Fourth Circuit relied in upholding Petitioner's plea to the firearm charge also can be used to establish that his plea to the drug charge was freely and intelligently made. (Criminal Case No. 3:03cr67, Doc. No. 21 at 1-4).

In addition, Petitioner has failed to show that there was credible evidence upon which counsel could have relied in order to establish his legal innocence to the charges. Petitioner also

---

[2] Although Petitioner's argument refers to the withdrawal of his "guilty plea," he does not identify which of the two pleas counsel should have sought to withdraw. (Doc. No. 1-1 at 16). Therefore, the Court will assume that Petitioner is claiming that counsel should have withdrawn both pleass.

has failed to present any evidence to show that the Court would have been compelled to disregard his Rule 11 declarations which, in the aggregate, tend to show that he enjoyed the close assistance of competent counsel at the time he entered his guilty plea. Indeed, although Petitioner's first attorney was replaced several months after he entered his guilty pleas, the decision to replace counsel was not based upon a finding of ineffectiveness or long-standing disagreement between her and Petitioner. On the contrary, the Court found that counsel diligently and appropriately represented Petitioner, and gave him perfectly accurate advice. The Court replaced Petitioner's first attorney because it determined that her relationship with Petitioner broke down when he learned that he had no defense to the career offender provisions. Therefore, Petitioner cannot establish either deficient performance or resulting prejudice in connection with counsel's decision not to seek the withdrawal of his guilty pleas.

### b. Objections to Petitioner's Pre-Sentence Report

Petitioner also claims that counsel was ineffective for failing to object to his Pre-Sentence Report on the grounds that the Probation Officer engaged in double counting when she increased his statutory mandatory minimum term from five to ten years imprisonment with the § 851 Notice and found that he was a Career Offender, and she erroneously recommended a firearm enhancement to his drug charge when he also was being convicted under § 924(c). (Doc. No. 1-1 at 16-29). Respondent argues that Petitioner received a sentence within the range to which he stipulated and, in any event, no such double counting occurred. (Doc. No. 7 at 13-14).

Once again, the Court of Appeals determined that Petitioner's sentence was reasonable because it was imposed within his "properly calculated Guidelines range." Byrd, 208 F. App'x at 217. Implicit in that determination is a finding that the Probation Officer did not erroneously double count any factors. Because Petitioner has failed to explain why the Court of Appeals'

determination should be disregarded, the law of the case doctrine precludes him from re-litigating this issue. Bell, supra, 5 F.3d at 66. Therefore, Petitioner's claim that counsel was ineffective for choosing not to raise these challenges to the Pre-Sentence Report must be rejected.

**B. Petitioner also claims that the prosecutor engaged in misconduct.**

By his final claim Petitioner alleges that the prosecutor engaged in misconduct by failing to withdraw the § 851 Notice in order to avoid the alleged double-counting, and by coercing him into pleading guilty to firing the gun despite the fact that the Indictment did not charge him with that conduct. (Doc. No. 1-1 at 30-32). Respondent argues that there was no basis for the Government to have withdrawn its Notice; that Petitioner was subject to the increased penalty for discharging his firearm notwithstanding his stipulation; and that there is no evidence that Petitioner was coerced into accepting his Plea Agreement. (Doc. No. 7 at 14-15).

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's conduct was, in fact, improper, and that such conduct prejudiced him to such an extent that he was denied a fair trial. United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007). Because the Court of Appeals has determined that Petitioner's sentence was imposed pursuant to the "properly calculated Guidelines range," he cannot establish that he was subjected to any erroneous double counting. Byrd, 208 F. App'x at 217. Therefore, Petitioner's allegation that the prosecutor caused or allowed him to be subjected to double counting is baseless.

Furthermore, Petitioner has failed to show that there was some reason why the prosecutor was required to withdraw the § 851 Notice. In the absence of such a requirement, Petitioner cannot establish that the prosecutor's decision not to withdraw the Notice was improper.

In United States v. O'Brien, 130 S.Ct. 2169, 2179 (2010), the Supreme Court repeated its

21

earlier determination from <u>Harris</u>[3] that details such as whether a defendant brandished or discharged a firearm are not elements of an offense under 18 U.S.C. § 924(c), but merely relate to the manner in which the offense was committed. The Court further indicated that these details are sentencing factors which are to be found by the trial judge. <u>Id.</u> Based upon <u>Harris</u>, the prosecutor did not improperly require Petitioner to stipulate that he had fired the gun. Therefore, Petitioner cannot establish that the prosecutor engaged in any misconduct on these bases.

### C. Petitioner proposes another claim under new Supreme Court precedent.

Finally, on January 20, 2011, Petitioner filed an amended Motion to Vacate proposing an additional claim that he is entitled to be re-sentenced without the career offender designation. (Doc. No. 18 at 4). In support of that claim, Petitioner argues that certain recent decisions, including the U.S. Supreme Court's opinion in <u>Carachuri-Rosendo v. Holder</u>, 130 S.Ct. 2577 (2010), establish that this Court erred in using his 2002 drug conviction as a predicate offense under the career offender provisions. (<u>Id</u>.). However, Petitioner has failed to seek consent from Respondent or leave of Court for this proposed claim as required by Rule 15(a)(2) of the Federal Rules of Civil Procedure.[4] He also has failed to explain why he believes the proposed claim should not be summarily dismissed as time-barred under the Antiterrorism and Effective Death Penalty Act of 1996. Therefore, Petitioner cannot proceed on his proposed claim.

### IV. <u>CONCLUSION</u>

Petitioner has failed to forecast any evidence to show that there is of a genuine issue of material fact to be resolved in a trial or that he is entitled to relief on any of his claims.

---

[3] <u>Harris v. United States</u>, 536 U.S. 545 (2002).

[4] When a party seeks to amend a pleading more than twenty-one days after the opponent has responded thereto, the party must either secure written consent from the opponent or permission from the court. Fed. R. Civ. P. 15(a)(1) and (2).

Accordingly, Respondent's Motion for Summary Judgment will be granted, and Petitioner's motion to vacate will be denied and dismissed.

## V.  ORDER

**IT IS, THEREFORE, ORDERED THAT:**

1.  Respondent's Motion for Summary Judgment (Doc. No. 8) is **GRANTED**;

2.  Petitioner's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. No. 1) is **DENIED** and **DISMISSED;** and

3.  Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has failed to make a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citations omitted).

Signed: March 10, 2011

Graham C. Mullen
United States District Judge